J-S32040-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JOSHUA CORREA | : | |
| | : | |
| Appellant | : | No. 1480 EDA 2023 |

Appeal from the Judgment of Sentence Entered February 15, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0001072-2018

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JOSHUA CORREA | : | |
| | : | |
| Appellant | : | No. 1481 EDA 2023 |

Appeal from the Judgment of Sentence Entered February 15, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0001071-2018

BEFORE: LAZARUS, P.J., STABILE, J., and KING, J.

MEMORANDUM BY KING, J.:                    **FILED SEPTEMBER 23, 2024**

Appellant, Joshua Correa, appeals *nunc pro tunc* from the judgment of sentence entered in the Philadelphia County Court of Common Pleas, following his jury trial convictions for first-degree murder, attempted murder, aggravated assault, carrying a firearm without a license, carrying a firearm on public streets in Philadelphia, and possession of an instrument of crime

("PIC").[1]  We affirm and grant counsel's petition to withdraw.

The relevant facts and procedural history of this case are as follows.  On October 22, 2017, Appellant shot Justin Braswell and Angel Ortiz after Angel Ortiz's brother, Jonathan Ortiz, burglarized Appellant's home.  Braswell died as a result of the shooting; Angel Ortiz survived.  On November 1, 2017, Appellant was arrested in New York and charged at two docket numbers, 1071-2018 and 1072-2018.  The cases were consolidated for trial.

On February 15, 2019, a jury convicted Appellant of the above-mentioned offenses.  Appellant's counsel requested a deferral of sentencing for preparation of a pre-sentence investigation ("PSI") report, but the trial court denied the request and proceeded immediately to sentencing.  The court sentenced Appellant to life without parole for the murder conviction plus an aggregate term of 28½ to 57 years of incarceration for his other offenses.

Following several procedural mishaps that occurred thereafter, the court restored Appellant's direct appeal rights *nunc pro tunc* on May 23, 2023.  That same day, Appellant timely filed notices of appeal *nunc pro tunc* at each underlying docket.[2]  Following the court's Pa.R.A.P. 1925(b) order, appellate counsel filed a Rule 1925(c)(4) statement of intent to file an **Anders**[3] brief in lieu of filing a concise statement.

_____

[1] 18 Pa.C.S.A. §§ 2502(b)(1), 901, 2702, 6106, 6108, and 907, respectively.

[2] This Court consolidated the appeals *sua sponte*.

[3] **Anders v. California**, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

Preliminarily, counsel seeks to withdraw representation pursuant to **Anders** and **Commonwealth v. Santiago**, 602 Pa. 159, 978 A.2d 349 (2009). **Anders** and **Santiago** require counsel to: (1) petition the Court for leave to withdraw, certifying that after a thorough review of the record, counsel has concluded the issues to be raised are wholly frivolous; (2) file a brief referring to anything in the record that might arguably support the appeal; and (3) furnish a copy of the brief to the appellant and advise him of his right to obtain new counsel or file a *pro se* brief to raise any additional points the appellant deems worthy of review. **Santiago, supra** at 173-79, 978 A.2d at 358-61. "Substantial compliance with these requirements is sufficient." **Commonwealth v. Reid**, 117 A.3d 777, 781 (Pa.Super. 2015). After establishing that counsel has met the antecedent requirements to withdraw, this Court makes an independent review of the record to confirm that the appeal is wholly frivolous. **Commonwealth v. Palm**, 903 A.2d 1244, 1246 (Pa.Super. 2006). **See also Commonwealth v. Dempster**, 187 A.3d 266 (Pa.Super. 2018) (*en banc*).

In **Santiago, supra**, our Supreme Court addressed the briefing requirements where court-appointed appellate counsel seeks to withdraw representation:

> Neither **Anders** nor [**Commonwealth v. McClendon**, 495 Pa. 467, 434 A.2d 1185 (1981)] requires that counsel's brief provide an argument of any sort, let alone the type of argument that counsel develops in a merits brief. To repeat, what the brief must provide under **Anders** are references to anything in the record that might arguably support the

appeal.

* * *

> Under **Anders**, the right to counsel is vindicated by counsel's examination and assessment of the record and counsel's reference to anything in the record that arguably supports the appeal.

**Santiago, supra** at 176, 177, 978 A.2d at 359, 360. Thus, the Court held:

> [I]n the **Anders** brief that accompanies court-appointed counsel's petition to withdraw, counsel must: (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

**Id.** at 178-79, 978 A.2d at 361.

Instantly, appellate counsel has filed a petition to withdraw. The petition states that counsel has conducted a careful review of the record and determined that the appeal is wholly frivolous. Counsel also supplied Appellant with a copy of the **Anders** brief and a letter explaining Appellant's right to retain new counsel or to proceed *pro se* to raise additional issues Appellant deems worthy of this Court's attention.

In the **Anders** brief, counsel summarized the relevant procedural history of the case. The argument section of the brief refers to relevant case law and portions of the record that might arguably support Appellant's issue. Counsel also provides the reasons for counsel's conclusion that the appeal is wholly frivolous. Therefore, counsel has substantially complied with the

technical requirements of **Anders** and **Santiago**.

Counsel raises the following issues on Appellant's behalf:

> 1. Did the trial court err when it imposed a sentence without ordering a [PSI] report?
>
> 2. Was the verdict against the weight of the evidence to such a degree that it shocks one's conscience?
>
> 3. Is the competent evidence of record legally sufficient to support the convictions in these matters?
>
> 4. Did the trial court commit reversible error when it admitted challenged testimony from a video collection expert witness?

(**Anders** Brief at 9-10).[4]

In his first issue, Appellant argues that the trial court erred by refusing to order a PSI report before sentencing. Appellant claims the court should have ordered a PSI report because, although first-degree murder carries a mandatory life without parole sentence, his additional charges do not carry such a mandatory sentence. Appellant maintains that if his murder conviction is overturned, he will need to be resentenced on the remaining charges, and a PSI report will be necessary. As presented, Appellant's issue challenges the

_____

[4] Appellant has responded to the **Anders** brief *pro se*. Most of Appellant's *pro se* response focuses on issues already raised by counsel, but Appellant additionally contends that counsel's **Anders** brief is deficient because it "resembles a no-merit letter, not a 'neutral' **Anders** brief." (**See** *Pro Se* Response, 7/15/24, at 2-3). As noted, **supra**, we have determined that counsel's **Anders** brief substantially complies with **Anders** and **Santiago**. Thus, we need only evaluate the issues presented in the **Anders** brief, and we will incorporate any claims that Appellant has raised *pro se* concerning those issues in our review of each issue.

discretionary aspects of sentencing. *See Commonwealth v. Flowers*, 950 A.2d 330 (Pa.Super. 2008) (stating claim that court failed to order PSI report implicates discretionary aspects of sentencing).

"[C]hallenges to the discretionary aspects of sentencing do not entitle an appellant to an appeal as of right." *Commonwealth v. Perzel*, 291 A.3d 38, 46 (Pa.Super. 2023), *appeal denied*, ___ Pa. ___, 301 A.3d 426 (2023). Prior to reaching the merits of a discretionary sentencing issue:

> [W]e conduct a four part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Commonwealth v. Evans*, 901 A.2d 528, 533 (Pa.Super. 2006), *appeal denied*, 589 Pa. 727, 909 A.2d 303 (2006) (internal citations omitted).

When appealing the discretionary aspects of a sentence, an appellant must invoke the appellate court's jurisdiction by, *inter alia*, including in his brief a separate concise statement demonstrating that there is a substantial question as to the appropriateness of the sentence under the Sentencing Code. *Commonwealth v. Mouzon*, 571 Pa. 419, 425-26, 812 A.2d 617, 621-22 (2002); Pa.R.A.P. 2119(f). "The determination of what constitutes a substantial question must be evaluated on a case-by-case basis." *Commonwealth v. Anderson*, 830 A.2d 1013, 1018 (Pa.Super. 2003). A

substantial question exists "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." **Commonwealth v. Troell**, 290 A.3d 296, 299 (Pa.Super. 2023).

An allegation that the sentencing court erred when it imposed a sentence without ordering a PSI report, "or in the alternative, failing to give a reason for not ordering such a report" raises a substantial question. **See Commonwealth v. Carrillo-Diaz**, 64 A.3d 722, 724-25 (Pa.Super. 2013) (citing **Commonwealth v. Kelly**, 33 A.3d 638 (Pa.Super. 2011)).

Instantly, Appellant preserved his sentencing claim at the sentencing hearing[5] and filed timely *nunc pro tunc* notices of appeal. Although neither counsel nor Appellant has provided the requisite Rule 2119(f) statement, "[w]here counsel files an **Anders** brief, this Court has reviewed the matter even absent a separate Pa.R.A.P. 2119(f) statement." **Commonwealth v. Zeigler**, 112 A.3d 656, 661 (Pa.Super. 2015). Additionally, Appellant's claim that the court erred in failing to order a PSI report raises a substantial question for our review. **See Carrillo-Diaz, supra**. Thus, we will address the merits of Appellant's sentencing claim.

"[S]entencing is vested in the sound discretion of the sentencing court, and we shall not disturb a sentence absent a manifest abuse of discretion."

_____

[5] Appellant did not file a written post-sentence motion.

***Commonwealth v. Schroat***, 272 A.3d 523, 527 (Pa.Super 2022). "In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision." ***Id.*** at 527-28.

The Pennsylvania Rules of Criminal Procedure provide that a sentencing judge has the **discretion** to order a PSI as an "aid in imposing an individualized sentence." ***Carrillo-Diaz, supra*** at 725. The Rule provides, in relevant part:

> **702. Aids in Imposing Sentence**
>
> **(A) Pre-sentence Investigation Report**
>
> (1) The sentencing judge may, in the judge's discretion, order a pre-sentence investigation report in any case.
>
> (2) The sentencing judge shall place on the record the reasons for dispensing with the pre-sentence investigation report if the judge fails to order a pre-sentence report in any of the following instances:
>
>> (a) when incarceration for one year or more is a possible disposition under the applicable sentencing statutes[.]

Pa.R.Crim.P. 702(A)(1), (A)(2)(a).

This Court has held that a sentencing judge must

> either order a PSI or conduct sufficient presentence inquiry such that, at a minimum, the court is apprised of the particular circumstances of the offense, not limited to those of record, as well as the defendant's personal history and

> background. … The court must exercise 'the utmost care in sentence determination' if the defendant is subject to a term of incarceration of one year or more[.]

*Commonwealth v. Goggins,* 748 A.2d 721, 728 (Pa.Super. 2000) (*en banc*) (internal citations and quotation marks omitted). Further, where a defendant is sentenced to a mandatory sentence of life without parole for first-degree murder, "as a practical matter, a PSI would not have affected the sentence." *See Commonwealth v. Fulton*, No. 80 EDA 2021, unpublished memorandum at 15 (Pa.Super. filed July 6, 2022), *appeal denied*, ___ Pa. ___, 298 A.3d 382 (2023).[6]

Instantly, the court agreed with the Commonwealth's statement at sentencing that a PSI report was unnecessary in light of Appellant's first-degree murder conviction requiring a life without parole sentence. (*See* N.T. Sentencing, 2/15/19, at 65). Thus, the court indicated its reason for denying Appellant's request for a PSI report on the record. *See* Pa.R.Crim.P. 702(A)(2)(a). *See also Fulton, supra*. Further, if Appellant's conviction were to be overturned, resentencing would be required, and a PSI report could be prepared at that time. *See generally Commonwealth v. Motley*, 177 A.3d 960, 963 (Pa.Super. 2018) (holding that if appellate court disposition upsets overall sentencing scheme of trial court, we must remand so that it can restructure its sentencing structure). Under these circumstances, we cannot say that the court abused its sentencing discretion. *See Schroat, supra*.

_____

[6] *See* Pa.R.A.P. 126(b) (explaining this Court may rely on non-precedential decisions of Superior Court filed after May 1, 2019 for persuasive value).

In his second issue, Appellant purports to challenge the weight of the evidence. Counsel, however, acknowledges that this claim is waived for failure to preserve it in a written motion either prior to or post-sentencing. In his response to counsel's **Anders** brief, Appellant asserts that "[counsel's] **Anders** brief fails when he asserts that there is no merit" to his weight claim, but Appellant does not address counsel's conclusion regarding waiver. (**See** *Pro Se* Response, 7/15/24, at 2). We agree with counsel that this issue is waived.

A challenge to the weight of the evidence must be preserved by a motion for a new trial. Pa.R.Crim.P. 607. The Rule provides:

> ### Rule 607. Challenges to the Weight of the Evidence
>
> (A) A claim that the verdict was against the weight of the evidence shall be raised with the trial judge in a motion for a new trial:
>
> > (1) orally, on the record, at any time before sentencing;
> >
> > (2) by written motion at any time before sentencing; or
> >
> > (3) in a post-sentence motion.

Pa.R.Crim.P. 607(A). "As noted in the comment to Rule 607, the purpose of this rule is to make it clear that a challenge to the weight of the evidence must be raised with the trial judge or it will be waived." **Commonwealth v. Gillard**, 850 A.2d 1273, 1277 (Pa.Super. 2004), *appeal denied*, 581 Pa. 672, 863 A.2d 1143 (2004) (internal quotation marks omitted).

Instantly, the record supports counsel's conclusion that Appellant failed

to preserve a challenge to the weight of the evidence by filing a post-sentence motion.[7] Therefore, he is not entitled to relief on his weight of the evidence claim. **See Gillard, supra**; Pa.R.Crim.P. 607(A).

In his third issue, Appellant argues the evidence was insufficient to support his convictions in this matter. Counsel's **Anders** brief does not identify which crime and which elements of that crime Appellant specifically challenges; rather, counsel notes that there were discrepancies in the testimony of the Commonwealth's witnesses. In Appellant's *pro se* response, he argues that "counsel does not make any mention of the botched witness testimony made by Mr. Marshall,"[8] which also appears to go to credibility. Neither of these arguments constitutes a proper challenge to the sufficiency of the evidence. **See Commonwealth v. Gaskins**, 692 A.2d 224, 227

---

[7] We note that when Appellant sought to restore his direct appeal rights *nunc pro tunc*, he did not request restoration of his post-sentence motion rights *nunc pro tunc*. (**See** PCRA Petition, 11/29/21, at 1-16; **see also** Amended PCRA Petition, 12/21/22, at ¶¶ 1-123).

[8] Jamelle Marshall, a witness to the crime, was subpoenaed to appear and testify in court. (**See** N.T. Trial, 2/12/19, at 133-36). He stated that he did "not want to be in court" and would not have testified without the threat of a bench warrant. (**See id.** at 135). Mr. Marshall testified that he knew the decedent, Justin Braswell, as well as Jonathan Ortiz. (**See id.** at 137-49). Although Mr. Marshall witnessed Jonathan Ortiz being chased down the street on the day of the murder, when asked to identify the assailant, Mr. Marshall repeatedly refused. (**See id.** at 137-142). Mr. Marshall was then impeached with his statement to police made on October 23, 2017, in which he identified Appellant, who he knew as "Chris," as the shooter. (**See id.** at 142-176). After questioning, Mr. Marshall admitted that he did not identify Appellant at trial because he was concerned for his safety and the safety of his family. (**See id.** at 174-75).

(Pa.Super. 1997) (stating challenges to credibility of witnesses goes to the weight of the evidence, not sufficiency). As discussed **supra**, Appellant's challenge to the weight of the evidence is waived.

Moreover, appellate review of a challenge to the sufficiency of the evidence is governed by the following principles:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [finder] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

**Commonwealth v. Jones**, 874 A.2d 108, 120-21 (Pa.Super. 2005) (quoting **Commonwealth v. Bullick**, 830 A.2d 998, 1000 (Pa.Super. 2003)). This Court has further explained:

> [E]vidence of identification need not be positive and certain to sustain a conviction. Although common items of clothing and general physical characteristics are usually insufficient to support a conviction, such evidence can be used as other circumstances to establish the identity of a perpetrator. … Given additional evidentiary circumstances, any

- 12 -

> indefiniteness and uncertainty in the identification testimony goes to its weight.

*Commonwealth v. Orr*, 38 A.3d 868, 874 (Pa.Super. 2011) (*en banc*), *appeal denied*, 617 Pa. 637, 54 A.3d 348 (2012) (internal citations omitted).

The Crimes Code defines first-degree murder as follows:

> **§ 2502. Murder**
>
> **(a) Murder of the first degree.**—A criminal homicide constitutes murder of the first degree when it is committed by an intentional killing.

18 Pa.C.S.A. § 2502(a).

> To find a defendant guilty of first-degree murder a jury must find that the Commonwealth has proven that he or she unlawfully killed a human being and did so in an intentional, deliberate and premeditated manner.
>
>> It is the element of a willful, premeditated and deliberate intent to kill that distinguishes first-degree murder from all other criminal homicide. …
>
> The *mens rea* required for first-degree murder, specific intent to kill, may be established solely from circumstantial evidence.

*Commonwealth v. Schoff*, 911 A.2d 147, 159-60 (Pa.Super. 2006) (internal citations and quotation marks omitted).

"Specific intent to kill can be established through circumstantial evidence, such as the use of a deadly weapon on a vital part of the victim's body." *Commonwealth v. N. Montalvo*, 598 Pa. 263, 274, 956 A.2d 926, 932 (2008), *cert. denied,* 556 U.S. 1186, 129 S.Ct. 1989, 173 L.Ed.2d 1091 (2009). *See also Commonwealth v. Sepulveda*, 579 Pa. 217, 226-27, 855 A.2d 783, 789 (2004), *cert. denied*, 546 U.S. 1169, 126 S.Ct. 1330, 164

L.Ed.2d 47 (2006) (stating abdomen is vital part of body); ***Commonwealth v. Drumheller***, 570 Pa. 117, 142-43, 808 A.2d 893, 908 (2002), *cert. denied*, 539 U.S. 919, 123 S.Ct. 2284, 156 L.Ed.2d 137 (2003) (stating torso may be considered vital part of body).

Instantly, multiple witnesses identified Appellant as the gunman who chased Jonathan Ortiz and who fired at Mr. Braswell and Angel Ortiz as they attempted to hide underneath a truck, and video surveillance corroborated these statements. (***See*** N.T. Trial, 2/12/19, at 66-109; 165-183; 210, 219-243, 246-259; N.T. Trial, 2/13/19, at 12-21, 90-95, 98-100, 104-128, 130-135; N.T. Trial, 2/14/19, at 43-52, 104-105, 140-151). Police firearms analysts confirmed that a single gun fired all thirteen cartridge casings recovered from the scene. (***See*** N.T. Trial, 2/13/19, at 58-60; N.T. Trial, 2/14/19, at 17-34). This evidence was sufficient to prove that Appellant was the shooter. ***See Schoff, supra***.

Appellant shot Mr. Braswell six times, including a bullet that penetrated his chest, heart, and lungs, and Mr. Braswell died from his injuries. (***See*** N.T. Trial, 2/12/19, at 36, 68-70; N.T. Trial, 2/13/19, at 104-128, 179-212). Appellant shot Angel Ortiz four times in the chest and once in the buttocks. (***See*** N.T. Trial, 2/12/19, at 37, 68-70; N.T. Trial, 2/13/19, at 96-98). Therefore, this evidence—the use of a firearm on the vital parts of the body— was sufficient to show that Appellant had specific intent to kill Mr. Braswell. ***See Schoff, supra***. ***See also N. Montalvo***, *supra*; ***Drumheller, supra***. Viewed in the light most favorable to the Commonwealth as verdict-winner,

the evidence was sufficient to sustain Appellant's conviction for first-degree murder.[9] Thus, to the extent Appellant has properly advanced a sufficiency challenge, it merits no relief.

In his last issue, Appellant argues that the court erred when it admitted testimony from a video collection expert witness. Appellant maintains that the Commonwealth presented at trial the testimony of Detective Thorsten Lucke, a member of the Police Department's digital image and video recovery team, who had reviewed, analyzed, and prepared a compilation of surveillance video recovered from cameras near the scene of the shooting. Appellant claims that counsel objected to Detective Lucke's narration of the surveillance video, including his identification of flashes depicted on the video as being consistent with muzzle flashes of a gun being fired. Appellant complains the court's admission of this evidence was improper, and this Court must grant relief. We disagree.

Our standard of review of a trial court's admission or exclusion of evidence is well established and very narrow:

> Admission of evidence is a matter within the sound discretion of the trial court, and will not be reversed absent a showing that the trial court clearly abused its discretion. Not merely an error in judgment, an abuse of discretion occurs when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence on record.

---

[9] Appellant appears to challenge only his first-degree murder conviction, so we do not address the sufficiency of the evidence for Appellant's remaining convictions.

- 15 -

***Commonwealth v. M. Montalvo***, 604 Pa. 386, 403, 986 A.2d 84, 94 (2009), *cert. denied*, 562 U.S. 857, 131 S.Ct. 127, 178 L.Ed.2d 77 (2010) (internal citations and quotation marks omitted). "[A] discretionary ruling cannot be overturned simply because a reviewing court disagrees with the trial court's conclusion." ***Commonwealth v. O'Brien***, 836 A.2d 966, 968 (Pa.Super. 2003), *appeal denied*, 577 Pa. 695, 845 A.2d 817 (2004) (internal citation and quotation marks omitted).

Our standard of review in cases involving the admission of expert testimony is well-settled: "Generally speaking, the admission of expert testimony is a matter left largely to the discretion of the trial court, and its rulings thereon will not be reversed absent an abuse of discretion." ***Commonwealth v. Watson***, 945 A.2d 174, 176 (Pa.Super. 2008) (citations omitted). "An expert's testimony is admissible when it is based on facts of record and will not cause confusion or prejudice." ***Id.***

Pennsylvania Rule of Evidence 703 provides:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted.

Pa.R.E. 703. Further, "[i]f the expert states an opinion the expert must state the facts or data on which the opinion is based." Pa.R.E. 705; ***see also*** Pa.R.E. 705, *Comment* (explaining that otherwise inadmissible facts and data supporting expert opinion are considered only to explain basis for expert's

opinion, not as substantive evidence). "[T]he purpose of expert testimony is to assist in grasping complex issues not within the ordinary knowledge, intelligence and experience of the jury." ***Commonwealth v. Mendez***, 74 A.3d 256, 262 (Pa.Super. 2013) (citation and internal quotation marks omitted).

Further, "when examining the potential for undue prejudice, a cautionary jury instruction may ameliorate the prejudicial effect of the proffered evidence." ***Commonwealth v. Hairston***, 624 Pa. 143, 160, 84 A.3d 657, 666 (2014). ***See also Commonwealth v. Sherwood***, 603 Pa. 92, 115, 982 A.2d 483, 497-98 (2009) (holding that cautionary instructions were sufficient to ameliorate undue prejudice caused by introduction of bad acts evidence). "Jurors are presumed to follow the trial court's instructions." ***Hairston, supra*** (citing ***Commonwealth v. Baker***, 531 Pa. 541, 614 A.2d 663 (1992)).

Instantly, Detective Lucke's expert testimony was testimony which would aide the jury in grasping "complex issues not within the ordinary knowledge, intelligence and experience of the jury," namely, identifying timestamps, places, and interpreting difficult-to-see visual data from multiple surveillance video cameras with multiple fields of view and time offsets. ***See Mendez, supra***. Detective Lucke did not offer any expert opinion identifying Appellant, but he testified regarding techniques he used to enhance the view, or explained what jurors were seeing. ***See id.*** Further, even if there was any danger of prejudice from Detective Lucke's testimony, the trial court cautioned

jurors:

> Ladies and gentlemen, Detective Lucke has stated to you in response to questions by the assistant district attorney that he prepared his video for presentation in court. And as he goes through and as you watch the video, please be advised that you, ladies and gentlemen of the jury, make factual determinations. So if anything that Detective Lucke sees is inconsistent with what you see, your observations control.

(N.T. Trial, 2/14/19, at 139-40). Because a jury is presumed to follow the trial court's instructions, this cautionary instruction was sufficient to ameliorate any potential prejudice caused by this testimony. *See Hairston, supra*. On this record, we cannot say the trial court abused its discretion in overruling Appellant's objection and admitting Detective Lucke's evidence and testimony. *See M. Montalvo, supra*; *Watson, supra*; *Hairston, supra*.

Further, our independent review of the record does not reveal any additional, non-frivolous issues. *See Palm, supra*. Accordingly, we affirm.

Judgment of sentence affirmed. Petition to withdraw is granted.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 9/23/2024